COLT'S PATENT FIREARMS MFG. CO. et al. v. NEW YORK SPORTING
GOODS CO.

(Circuit Court of Appeals, Second Circuit.  September 5, 1911.)

No. 251.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—AUTOMATIC PISTOL.

The Browning patent, No. 580,924, for a firearm, dealing specifically
with an automatic pistol, is valid, but is an improvement patent only, and
cannot be given a broad construction, but must be limited strictly to the
elements as described and shown in the specification and drawings, one
of which is a barrel mounted on a frame and having a limited double
movement—longitudinal and vertical. As so construed and limited, it is
not infringed by the device of the Searle patent, No. 804,985, in which
the barrel is not mounted on the frame and has no movement.

Appeal from the Circuit Court of the United States for the South-
ern District of New York.

Suit in equity by the Colt's Patent Firearms Manufacturing Com-
pany and John M. Browning against the New York Sporting Goods
Company.  Decree for defendant, and complainants appeal.  Affirmed.

This cause comes here upon appeal from a decree dismissing the
bill of complaint in an action for infringement of patent. The patent
is No. 580,924, issued April 20, 1897, to John M. Browning for a
"firearm." The alleged infringing pistol is manufactured by the Sav-
age Arms Company, of Utica, by which company the suit is defended;
sale by defendant being admitted.

See, also, 190 Fed. 563.

The following is the opinion of the Circuit Court by Platt, District
Judge, in this case and the case reported in 190 Fed. 563:

These are two suits, based upon different patents touching the same sub-
ject-matter, viz., pistols of the gas-operated automatic recoil type. The pat-
ent in suit 3–191 is No. 580,924, granted to Browning April 20, 1897. The
patent in suit 3–192 is No. 747,585, granted to Browning December 22, 1903.
The claims at issue under the first patent are Nos. 7 and 13. The claim at
issue under the second patent is No. 10. Claim 2 of the first patent and 22
of the second patent were in the original issue, but are now eliminated from
the contention. For convenience the claims are now stated:

First Patent, Suit 3–191.

"7. In a firearm, the combination with a frame of a breech block or bolt
carrier sliding on said frame, said breech block or bolt carrier comprising
a breech-bolt and a forward extension embracing said frame, and a barrel
mounted upon said frame within said forward extension and having a limited
movement upon said frame to move with and to lock and unlock said breech
block or bolt carrier."

"13. In a firearm, the combination with a frame and a barrel mounted on
said frame, of a breech block or bolt carrier sliding on said frame, said breech
block or bolt carrier comprising a breech-bolt and a forward, semi-tubular
extension to cover the barrel, and having an opening forward of the breech-
bolt to permit the ejection of the shell."

Second Patent, Suit 3–192.

"10. In a firearm, the combination of a frame, a rotatable barrel having
on its under side segmental ribs at right angles to the axis of the barrel in
engagement with grooves in the upper side of the open frame, and a breech-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

slide comprising a cover holding the barrel in engagement with the frame and a breech-bolt in rear of the barrel."

Our attention must be centered for some time upon the first patent in suit, because the decision in that case will have great, and perhaps controlling, importance in the decision of the other.

The combination of claim 7 reduced to its lowest terms is: (1) A frame. (2) A breech-bolt carrier sliding on the frame, which is made up of a breech-bolt and a forward extension embracing the frame. (3) A barrel mounted upon the frame within the forward extension, which must have a limited movement upon the frame, so as to be capable of locking and unlocking the breech-bolt carrier.

. The combination of claim 13, although put together differently, is pretty much the same as that of claim 7, except that an ejection opening to be located forward of the breech-bolt is added. I have said "pretty much the same," but, to be exact, it is in some respects more restricted, because it defines the forward extension of the earlier claim as a semi-tubular one, covering the barrel and mounted on the frame.

The defense in the case we are now considering, as well as in the later one, is noninfringement. To one conversant with its details there must come a conviction that in the ultimate analysis the question is really one of law. The claims must be construed so as to learn what the exact contract between the government and the patentee was. Having determined that. the burden of proof rests upon the complainants to show that the defendant has trespassed upon their reserved rights, and the lines in that respect must be tightly drawn, because the Patent Office has already passed upon it in granting a later patent to defendant's licensor, Mr. Searle. That action, of course, is not binding upon the court; but it must have more or less persuasive force. dependent upon the extent of the knowledge which the office had of the facts pertinent to that issue.

The patentee selects a pistol as the kind of firearm to which he proposes to apply his combination, and exhibits one wherein the various parts are operated by the rearward acting force of the gases produced by the explosion of the cartridge when the pistol is fired. He presented to the office a creditable and commercially satisfactory pistol by the definite structural and operative relation of the elements of claims 7 and 13, but did not proclaim that he had discovered a virgin field. In fact, he practically announced himself as an improver upon what had gone before. He bound himself hand and foot with definite limitations upon his operative disclosure, and seems to have been particularly exultant over his discovery that in his pistol the barrel has a double movement at one and the same time; "that is to say," to quote him exactly, "a movement in the direction of its length and simultaneously therewith another movement." The other movement is manifestly the swinging up and down movement of the barrel, which permits the bolt-carrier to be locked or unlocked. Since the two movements are going on together, the advantage is attained of permitting the barrel to move a little way in the same direction that the bolt-carrier moves, so that the explosive gases can have full effect upon the bullet before the breech is unlocked and opened. It is manifest that to carry his combination into operative effect the barrel must move longitudinally with the bolt-carrier for a limited distance before it performs the additional function of helping to unlock the bolt-carrier.

Nearly ten years later Mr. Searle went to the Patent Office with his claims of invention in the same class of firearms, using a pistol as his example. His inventive thought was clothed in terms of a combination which he insisted was different, independent of, and beyond the improvement which Browning had added to the art so many years before. He obtained his patent, and the defendants have applied it to their pistols with commercial success.

The complainant, having lawfully obtained the benefit of Browning's invention, now comes to court and says that Searle misled the experts at the Patent Office into adopting a theory, instead of a condition, and that in plain practice it is clear that he has stepped squarely upon the rights preserved to the complainant. Thus the issue is squarely joined. It is fair to assume that both parties are equally sincere, but it must be obvious that the complainants must present a very plain case to entitle them to equitable relief. Complain-

ants naturally dislike the palpable invasion of their trade, and hope to prevent, with the help of the court, the invasion of their monopoly. So far as the mind of the court which is now guiding the hand which writes is concerned, it ought to be well known to the patent bar that it has never hesitated to sustain a complainant who comes forward with plain equities to favor its contention. Whenever a case is evenly balanced, or of great doubt, such relief can hardly be expected.

The patent in suit has been examined with care to find what the patentee thought that he had invented and secured the right to control when he applied for his patent, nearly 10 years prior to this contention. The specifications in a patent show in detail what the inventor did with the prior art before him. The claims show what he asks the government to grant him the usual monopoly upon. Specifications may explain an ambiguous claim, and they may limit a claim which would otherwise appear to be broad; but they can never be used to expand a claim which is clear-cut, plain, and unambiguous. The reason for the rule is too obvious to need explanation.

The patentee only gets what he claims, no matter what he may have invented. If it shall happen that, 10 years after the patentee makes his bargain, it shall become evident to the expert that, in the light of what has since been learned, it was within the inventor's grasp to have made a broader claim, it would be unfair to the public for the court to so interpret his claim as to give him the benefit of the broader monopoly. He must be held to exactly what he disclosed and demanded at the time of the grant. He wrote the contract and must abide by it.

I do not intend to say that the thoughts which the experts in this case now think that the patentee had and expressed as the substance of his invention might not verge on the limited class of epoch-making thoughts which have now and then emerged above the patent horizon, and if they could be found plainly set forth in the claim, they might form a basis for liberal treatment and broad thoughts on the part of the court. Those thoughts, as I understand it, are found in the very tag end of the specifications, where he added incidentally a statement that by the arrangement and construction of the parts which he had disclosed he was able to make the frame and barrel so light in weight that the breech-bolt carrier might be of considerable weight, whereby the momentum of the heavy carrier enabled it to continue the opening movement after the gas pressure in the barrel had been released and the barrel stopped, storing energy in the reaction spring.

Whether on such a statement as that he could have worked out a broad claim of invention is problematical. That he did not is so manifest as to make further discussion unwarranted. If he had tried to do so, we should find his effort in the forefront of his claim, and not obscurely tucked away in No. 7, which has to do with the limited movement already referred to, or in 13, which was apparently intended to take care of his ejection opening. The patentee was a mere improver—a commercially fortunate improver, it is granted; but from the standpoint of inventive thought, purely and simply an improver, in the way touched upon at the beginning. Whether Mr. Searle is a pioneer or simply an improver himself makes no difference in this contest. His thought was based upon an investigation of the effect of the bullet in its progress through the rifling of the barrel upon the breech-block, and differentiates his monopoly from that granted to Browning.

The study of the case in detail has been a pleasant and, it is hoped, a profitable one, and it is irksome to refrain from stating seriatim the various inferences and subordinate conclusions which have brought me up to my final conclusion; but to do so would clog and hinder other pressing matters which must soon have the benefit of study and decisions. Brevity has therefore been my watchword, and what has been hurriedly jotted down will serve, I hope, to explain the frame of mind which has forced me to my decision.

We go straight back to the "double movement" of the barrel, which Mr. Browning emphasized in his patent. The defendants say, and I agree with them, that the barrel of their pistol has no such double movement; that their barrel does not slide back and forth at all; that the unlocking is due to the action of the bullet; that the only movement of the barrel is a slight rotation upon its own axis, incident to the lateral displacement of the lock-

ing lug when the breech-slide itself recoils. There are many other differences, all due to the inherent difference in the mode of operation adopted by the two inventors.

The defendant insists that its pistol has a barrel without longitudinal motion, which is firmly locked against the breech-bolt until the bullet leaves the pistol; that in fact the rifling of the bore of the barrel tends to strengthen the locking force while the bullet is leaving the pistol; that, on the other hand, the complainants' pistol has a barrel which is locked against a yielding breech-bolt, which, retaining its embrace with the breech-bolt, retreats for a limited time after the explosion until the peculiar swinging motion of the barrel takes place and the unlocking occurs.

The complainants' pistol surely acts in the manner indicated, and they are bound by a preponderance of testimony to show that defendant's pistol operates in the same way. It is not enough to show that defendant's pistol does not act as defendant says it does, but beyond that the complainants must show that it operates in the way the patent in suit teaches. I do not think they have succeeded in either respect, but in the latter they have certainly lamentably failed.

After going up and down and across the record in this case, we come at the end to where we started. In a firearm, the combination of frame, barrel, and breech-slide, with some locking and interlocking arrangement between barrel and breech-slide, as the principal co-operating elements, to perform automatically by the aid of the gases from the exploded cartridge the ejection of spent cartridges and the introduction of fresh ones, was old when Browning entered the field. His advance was in showing a specific arrangement for accomplishing the well-known result. He went at it in one way, and much later Searle went at it in another. The latter is entitled to the benefit of his invention without paying tribute to Browning.

The decision of the issues raised in the first suit seems to settle the dispute upon claim 10 of the later patent. Complainants have not shown that defendant's pistol contains the underlying spirit and purpose of the patent in suit, No. 747,585, in the operative relations of its frame, barrel, and breech-slide, and beyond all that, have not presented a case which makes it possible to read claim 10 upon defendant's pistol.

Defendant's has no rotatable barrel, in the sense which the words must bear in the claim. It has no segmental ribs, but merely a single anchoring lug. The latter is not an equivalent of the former, for obvious reasons. The invention of the patent in suit needed a plurality of ribs for firm seating of the barrel. It needed segmental ribs, so that they could be rotated out of engagement with the grooves. Defendant's barrel is otherwise fully supported, and the locking lug simply prevents longitudinal movement of the barrel. Complainants' ribs must be at right angles to the axis of the barrel. Defendant's lug need not be at right angles. It can do its work quite as well at some other angle. Defendant's pistol has not the kind of "cover holding the barrel in engagement with the frame" which patentee had in mind when he formulated the claim which offers the issue in this suit.

The bills in both cases must be dismissed for want of equity. So ordered.

W. K. Richardson and A. D. Salinger, for appellants.
Edmund Wetmore and H. S. Knight, for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

PER CURIAM. Although the patentee states that his improvement is not restricted to any particular kind of firearm, the specifications deal with a pistol; and, since defendant's device is also a pistol, it will be convenient to refer to pistols in this discussion.

The specification states that the invention relates to automatic breech-loading firearms "in which the several operations—such as the unlocking and opening of the breech after firing a shot, the ejection of the empty cartridge shell, the cocking of the hammer, the presenta-

tion and introduction of a new cartridge to the chamber of the barrel, and the closing and locking of the breech—are automatically effected by or through the energy of the recoil of * * * that part which at the time of firing the shot closes the breech or rear end of the cartridge-chamber of the barrel and of the parts connected therewith after each discharge." This concedes, as the record clearly indicates, that Browning was not a pioneer in the art of automatic firearms. Complainants do not contend that he was, but merely an improver in details of construction. Nevertheless, if some of his improvements are novel and useful, that circumstance will not deprive him of the right to such improvement if properly claimed. The patent deals with an automatic pistol complete in all its parts. In consequence the specifications refer to the combinations of many different parts and the claims (there are 18 of them) relate to various separate combinations. The objects of invention are stated to be practicability, efficiency, safety in use, simplicity, inexpansiveness, security against release of the hammer until all parts are locked in proper position for discharge, against release of hammer after discharge until the trigger is in proper position, and automatic locking and unlocking the breech-block by means of the hammer. All the parts of the complete pistol, "lock, stock, and barrel," breech-block, magazine, ejector, etc., are fully and carefully described, and their interrelations pointed out. As might be expected, the defendant's complete pistol has many points of difference from the weapon of the patent, and therefore infringement is charged of 2 claims only of the 18.

There were patents for various forms of automatic pistol before Browning, but the one which best illustrates the prior art was apparently the Borchardt pistol (No. 571,260, November 10, 1896). In this weapon the barrel is screwed at its rear end into a rearwardly-projecting extension $h$, movably engaging with and sliding in the frame $a$. At the rear end of $h$ there is pivoted a spindle on which turns the rear link of a heavy toggle-joint. The forward link of this toggle-joint presses against the rear of the breech-bolt $c$, holding it firmly against the breech of the barrel. Upon discharge the breech-bolt is forced back by recoil, and, while the toggle-joint holds it in place it pulls the barrel back with it, by the spindle and extension $h$. But by an arrangement of parts which need not be described, after a very short movement rearward, the toggle-joint is broken (thrown up); and thereupon the breech-bolt is drawn back away from the barrel, which ceases its rearward motion, and the parts which eject the old shell, introduce a new cartridge, cock and restore to firing position, come into action. The defects charged against the Borchardt pistol in complainants' brief are these: It is a long, heavy, complicated affair, with plenty of projections and exposed mechanism. One of the witnesses says:

"It is entirely too heavy for a pistol of the small caliber which it is, and is complicated, cumbersome, and awkward to hold in the firing position. (Its handle is in the middle.) On account of the heavy rearward extension beyond the grip of the pistol, it was almost impossible to shoot it accurately. It has the other great fault, due to its form, that it cannot be carried in any pocket

or holster without surely getting caught at the time when one attempts quickly to withdraw it for use."

It is also pointed out that the barrel and rearward extension therefrom are very heavy, much heavier than the breech-piece itself, which, it is said, gives great momentum to the wrong part, viz., to the barrel, which must be stopped after a short movement, instead of to the breech-piece, which must move a long distance against the stress of the reaction spring and perform its several functions. The testimony seems quite clearly to sustain these criticisms, and we are satisfied. that the complete pistols, both of complainants and defendant, are distinct improvements upon the Borchardt.

It will be necessary to quote from the specifications so much only as will disclose such parts of the complete organism as the two claims in controversy are concerned with. In pistols of this type it seems necessary that immediately upon discharge the breech-bolt should remain against the breech long enough for the gases of explosion to give. proper impulse to the bullet. Thereafter the breech-bolt separates from the barrel to allow ejection, insertion, etc. The temporary clasping of the bolt against the breech is secured in Borchardt by the extension, spindle, and toggle-joint, as we have seen. In complainants' patent the arrangement of parts is as follows: The barrel is provided with two lugs, projecting from its under side, one near the muzzle, the other at the breech, corresponding recesses being formed in the frame. Links are secured in slots in said lugs and between the walls of said recesses by transverse pivot-pins, so that said links swing freely in the plane of the axis of the barrel. The links are of such length and so attached that the axis of the barrel remains always parallel to its normal position, while as the barrel is moved forward or back it swings bodily from and towards the frame. As the specification states, the barrel is attached to the frame in such a manner "as to be capable of limited movement only, but of a double movement within its limits—that is to say, the barrel is free to move to and fro in the direction of its length, and also to have another movement at the same time, such other movement being, in the construction represented in the drawings, a bodily movement toward and from the frame."

The breech-bolt has a long forward extension (in which is cut a slot for the ejectment of the empty shells), which incloses substantially the whole barrel. It is semi-tubular or U-shaped, and has longitudinal ribs and grooves to engage corresponding ribs and grooves formed on the frame to be thereby held to the frame and guided thereon in its reciprocation. This extension is called in the patent "the breech block or bolt carrier." Just forward of the slot for empty shells this carrier is provided with one or more recesses to receive corresponding transverse ribs or projections on the barrel, said ribs or projections being caused to enter and occupy said recesses by the movement in the transverse or vertical plane which the barrel has at the same time that it is moved forward in a longitudinal direction by the breech block or bolt carrier during the last of the forward movement of the latter, whereby the breech block or bolt carrier is securely locked to the barrel and the breech-bolt is held rigidly against the end

of the barrel, closing the breech. In this closed position, therefore, the breech block or bolt carrier and the barrel are securely interlocked, and neither one can move independently of the other. When, however, the breech block or bolt carrier is moved rearwardly under the influence of the recoil, the barrel moves for some distance with it until the rocking movement of the barrel on the links heretofore explained lowers the barrel until it rests upon the frame, and thereby withdraws the ribs from the recesses in the breech block or bolt carrier and releases the carrier from the barrel. The frame prevents further rearward motion of the barrel, which is left with its breech in proper position to receive a fresh cartridge. The continued rearward movement of the breech block or bolt carrier opens the breech by moving the breech-bolt away from the barrel. During the return or forward movement of the breech block or bolt carrier the barrel is kept from moving forward with it by the top of the breech block or bolt carrier, which slides over the ribs and prevents the barrel from rising from its frame; but as the last of the closing movement brings the face of the breech-bolt against the breech, the recesses arrive above the ribs, permitting the barrel to rise as the ribs enter the recesses, and at the same time to be pushed forward by the breech block or bolt carrier, so that when the latter and the barrel arrive at their forward or closed position they are again securely locked, as before. There is described an arrangement of the links, pivots, etc., intended "to delay somewhat the unlocking of the barrel and breech block or bolt carrier, so as to insure the exit of the projectile from the muzzle and the consequent relief of the pressure of the powder gases in the barrel before the carrier is unlocked and the breech opened."

That the firearm thus described was sufficiently novel and useful to warrant the issue of a patent seems quite plain upon the record of the prior art; indeed, it is not understood that this proposition is seriously disputed.

The first claim relied upon is:

"7. In a firearm, the combination with a frame of a breech block or bolt carrier sliding on a frame, said breech block or bolt carrier comprising a breech-bolt and a forward extension embracing said frame, and a barrel mounted upon said frame within said forward extension, and having a limited movement upon said frame to move with and to lock and unlock said breech block or bolt carrier."

The defendant's weapon, which closely resembles complainants' is said to embody a wholly novel principle discovered by one Searle, defendant's assignor, and covered by patents issued to him. It is contended that in defendant's pistol the breech-slide is absolutely locked against the recoil motion until the bullet has left the barrel. This happens, as Searle states in his patent, 804,985, because "the inertia of the projectile or its resistance to rotation as it takes into the rifling of the barrel amounts to a very considerable force, that can be utilized to perform work without materially detracting from the effect of the rifling on the projectile."

There is much testimony in the record for and against this theory. Experiments have been made and criticised, and the experts are at

variance. It will not be necessary to go into that branch of the case, nor to express any opinion as to the weight of conflicting evidence. It is conceded that defendant's barrel has one movement only. It rotates, but does not move forward and back. It cannot so move, because it is anchored against fore and aft movement (patent 936,369) "by a lug on the under side of the barrel inserted between two shoulders integral with the frame; the shoulders permitting the barrel to rotate, but holding it against movement in the direction of its bore." Rotation is effected by engagement between a lug on the top of the barrel and a slot in the breech bolt or block carrier, called in the Searle patents the "breech-slide." The relation of parts is so arranged that for a moment bolt and breech are held together, and thereafter the bolt moves away from the breech. The details of the structure need not be discussed. The question is: What does the seventh claim mean when it says, of the barrel, "having a limited movement upon said frame to move with and to lock and to unlock said breech block or bolt carrier"? Complainants would have it construed so that the word "with" should mean only "synchronously," making it read "a limited movement to lock and unlock, which movement takes place at the same time that the carrier is itself moving." This seems to us a very strained construction, and we concur with Judge Platt in the conclusion that the double movement described in the specifications is expressed in this claim. The barrel is to have a limited movement "with * * * said breech block or bolt carrier," locked to it by ribs and recesses, and therefore moving "with" it; and the barrel is also to have another movement of its own to make or break such lock. The whole language of the patent plainly calls for such a construction of this claim, and, as thus construed, there is no pretense of infringement.

The other claim relied upon is:

"13. In a firearm, the combination with a frame and a barrel mounted on said frame, of a breech block or bolt carrier, comprising a breech-bolt and a forward semi-tubular extension to cover the barrel, and having an opening forward of the breech-bolt to permit the ejection of the shell."

In the opinion of a majority of the court it cannot be successfully contended that the Browning patent, No. 580,924, covers a generic invention. Automatic firearms, embodying the general principles of the Browning device, had long been known, and are shown and described in numerous prior patents heretofore referred to, notably the patent to Borchardt.

As time progressed defects were discovered, and, as usually happens in so promising a field, many skilled workers in the art entered upon the task of remedying these defects; the result being the compact and effective arm of the present day. Some of these men were inventors, others were skilled mechanics, and frequently the changes, even when made by men possessing the inventive faculty, required only the skill of the calling. The finished product of to-day is to a large extent the evolution of successive improvements developed as experience demonstrated their necessity. Browning does not assume to be a pioneer. He distinctly says that his additions and changes are but

improvements upon existing structures. It is not pretended that Browning was the first to construct an automatic recoil-operated firearm containing as essential elements the frame, the barrel, and the breech-slide. He has made certain definite and meritorious improvements upon this firearm, consisting, as the complainants' expert states, "in a definite structural and operative relation of these three elements to one another in the organization of the pistol."

It is manifest, therefore, that though he is entitled to the rewards of his contribution to the art, and to a reasonable range of equivalents, he is not entitled to the fruits of the labor of others who have endeavored to reach the same result by improvements along different lines. Other inventors have the same right as Browning to improve the combination of the frame, barrel, and breech-slide, and, if the result be accomplished by elements differing from his to the extent that they cannot be regarded as clear equivalents, these inventors cannot be held as infringers. In other words, the claim cannot be given a broad construction. It must be confined strictly to the elements as shown and described.

The combination of claim 13 contains the following elements: First, a frame; second, a barrel mounted on said frame; third, a breech block or bolt carrier sliding on said frame, said breech block or bolt carrier comprising a breech-bolt and a forward semi-tubular extension to cover the barrel, and having an opening forward of the breech-bolt to permit the ejection of the shell.

In order to construe the claim properly, recourse must be had to the specification and the prior art. We cannot permit speculation and guesswork to guide us as to the character and structure of the elements of this claim. What kind of a frame is referred to? What are the dimensions of the barrel, and how is it mounted on the frame? What is the form of the breech-block and its semi-tubular extension, how does the latter cover the barrel, and what is the character of the opening forward of the breech-bolt?

The answers to these questions are made clear by an examination of the specification and drawings and the proceedings in the Patent Office. "The frame *a* is extended forward for the attachment thereto of the barrel *b* and for the reception and support of the reaction spring," and is constructed so as to form a seat for the barrel when it is in its rearmost position. The barrel must be mounted on the frame "in such a manner as to be capable of limited movement only, but of double movement within its limits—that is to say, the barrel is free to move to and fro in the direction of its length, and also to have another movement at the same time; such other movement being, in the construction represented in the drawing, a bodily movement toward and from the frame."

The breech-block is sufficiently described in the claim. It must, however, be connected with a transverse key near its forward end, which is inserted through rectangular recesses cut therefor in its sides. It is also provided, just forward of the ejection opening, with one or more openings with recesses to receive corresponding ribs on the barrel,

which are caused to enter the recesses "by the movement in the transverse or vertical plane which the barrel has at the same time that it is moved forward in a longitudinal direction."

The patentee says that he does not restrict his invention "to a magazine-pistol nor any other particular kind of firearm." How, then, is this claim to be construed? Is it to be given a broad construction commensurate with its language, or is it to be confined to the firearm actually produced by Browning?

We are convinced that we must follow the familiar rule and interpret the claim in the light of the specification, conceding to Browning all that he has accomplished, but not permitting him to collect tribute from an independent inventor, who has made other improvements in an already crowded art. The three elements of the claim—the frame, the barrel and the breech-block—are not any frame, barrel, and breech-block, but Browning's frame, barrel, and breech-block, as described and shown in his specification and drawings. It is not enough that the defendant has these three elements, unless they are found in the environment and operating in the manner described by Browning. They cannot so operate and accomplish the result sought by him unless they have the characteristics and perform the functions pointed out in the patent. His combination will not operate unless its members are assembled as he directs. The frame and the barrel must be so constructed as to permit the "limited double movement" which is so clearly emphasized. Without this the combination is inoperative.

The barrel of the patent must have a longitudinal and also a vertical movement. The bolt-carrier comprises the bolt as an integral part thereof. In the defendant's pistol the barrel is not mounted on the frame, but is mounted on the bolt-carrier. It has no longitudinal or vertical movement, but is fixed against both. The "double limited movement" of the patent is therefore wholly absent. In the defendant's structure the breech-bolt is separate from the bolt-carrier; in the patented structure the carrier comprises the bolt as an integral part thereof.

Many other differences between the two structures could be pointed out, but sufficient has been said to indicate our views. It is enough that the defendant's pistol does not have one of the elements of the combination of the claim, namely, a barrel mounted on a frame. Neither does it have the "limited double movement" which is an essential ingredient of the combination of the claim.

The complainant advances the ingenious argument that the defendant's barrel is mounted upon the frame, because the breech bolt carrier, upon which it is *actually* mounted, is slidingly mounted on the frame. In support of this contention it is asserted that "the barrel is mounted upon the frame just as truly as a rider is mounted upon a horse, in spite of the use of a saddle."

Undoubtedly a rider is mounted upon a horse, even though he wears breeches and has a saddle under him; but the illustration, though specious, fails, we think, for lack of resemblance. We might suggest another and, perhaps, a more relevant simile. Would it be accurate to

assert that the locomotive engineer seated in his cab is mounted on the rails, because his engine is so mounted?

In the most favorable view for the complainants, which can be taken of the evidence, infringement of the thirteenth claim is involved in doubt.

It follows that the decree of the Circuit Court must be affirmed, with costs.